UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY STEUDTE,<br><br>                      Plaintiff,<br><br>      v.<br><br>CLEVELAND BIOLABS, INC., LEA VERNY, RANDY S. SALUCK, ALEXANDER ANDRYUSHECHKIN, DANIIL TALYANSKIY, ANNA EVDOKIMOVA, and IVAN FEDYUNIN,<br><br>                      Defendants. | CASE NO.: _____<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Gary Steudte ("Plaintiff"), by his undersigned attorneys, for this Complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Cleveland BioLabs, Inc. ("Cleveland Bio" or the "Company"), and members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Cleveland Bio, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger between the Company, Cytocom, Inc. ("Cytocom"), and High Street Acquisition Corp. ("Merger Sub"), a direct, wholly-owned subsidiary of Cleveland

1

Bio ("Proposed Transaction").

2. Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

3. Pursuant to the Agreement and Plan of Merger dated October 16, 2020, between the Company and Cytocom ("Merger Agreement"), Merger Sub will merge with and into Cytocom, with Cytocom surviving the merger as a wholly-owned subsidiary of Cleveland Bio.

4. Upon consummation of the Proposed Transaction, the Company's shareholders will own 39% of the outstanding shares of the combined company, while Cytocom's shareholders will own the remaining 61% ("Merger Consideration").

5. On February 16, 2021, in order to convince Cleveland Bio's public common stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement ("Registration Statement") with the SEC.

6. In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) Cytocom's financial projections relied upon by the Company's financial advisor, Cassel Salpeter & Co., LLC ("Cassel") in rendering its fairness opinion; (ii) the valuation analyses performed by Cassel; (iii) potential conflicts of interest for Cassel in connection with the Proposed Transaction; and (iv) whether Cleveland Bio executed nondisclosure agreements ("NDAs") with Company A, Company B, and Company C.

7. The Proposed Transaction is expected to close in the second quarter of 2021, so the special meeting of the Company's shareholders to vote on the Proposed Transaction is imminent ("Shareholder Vote"). Therefore, it is imperative that the material information that has been omitted from the Registration Statement be disclosed prior to the Shareholder Vote, so Cleveland

Bio's shareholders can properly exercise their corporate voting rights.

8. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Delaware State law. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cleveland Bio's public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's common stock trades on the Nasdaq, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

12. Plaintiff is, and has been continuously throughout all times relevant, the owner of Cleveland Bio common stock.

13. Defendant Cleveland Bio is a Delaware corporation with its principal executive offices located at 73 High Street, Buffalo, NY 14203. The Company's common stock trades on the Nasdaq under the ticker symbol "CBLI."

14. Defendant Lea Verny is, and has been at all relevant times, a director of the Company and Chairman of the Board.

15. Defendant Randy S. Saluck is, and has been at all relevant times, a director of the Company. In addition, Defendant Saluck was the Chairman of the Special Committee authorized to negotiate and consider the Proposed Transaction.

16. Defendant Alexander Andryushechkin is, and has been at all relevant times, a director of the Company.

17. Defendant Daniil Talyanskiy is, and has been at all relevant times, a director of the Company. Defendant Talyanskiy was also a member of the Special Committee authorized to negotiate and consider the Proposed Transaction.

18. Defendant Anna Evdokimova is, and has been at all relevant times, a director of the Company.

19. Defendant Ivan Fedyunin is, and has been at all relevant times, a director of the

Company.

20. The defendants identified in paragraphs 14 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Cleveland Bio, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I. Background of the Company, Cytocom, and the Proposed Transaction**

21. Cleveland Bio is a biopharmaceutical company that develops novel approaches to activate the immune system and address various medical needs in the United States and Russia. Its proprietary platform of toll-like immune receptor activators (TLR) has applications in mitigation of radiation injury, radiation oncology, and vaccines. The Company's product candidate is entolimod, an immune-stimulatory agent, which is used as a medical radiation countermeasure and other indications in radiation oncology. It is also developing Mobilan, a recombinant non-replicating adenovirus that directs expression of TLR5 and its agonistic ligand. Cleveland Bio has strategic partnerships with the Cleveland Clinic, Roswell Park Cancer Institute, and Everon Biosciences.

22. Cytocom is a clinical-stage biopharmaceutical company developing novel immunotherapies targeting autoimmune, inflammatory, infectious diseases and cancers based on a proprietary platform designed to rebalance the body's immune system and restore homeostasis. Cytocom is developing therapies designed to elicit directly within patients a robust and durable response of antigen-specific killer T cells and antibodies, thereby activating essential immune defenses against autoimmune, inflammatory, infectious diseases, and cancers. Specifically, Cytocom has four programs in late-stage clinical development in Crohn's disease, Fibromyalgia, Multiple Sclerosis, and Pancreatic Cancer.

23. According to the October 19, 2020, joint press release announcing the Proposed Transaction:

**Cytocom and Cleveland BioLabs Announce Definitive Merger Agreement**

*Merger to create a single public company focused on the development and commercialization of immunotherapies for oncology, infectious disease, inflammation and auto-immune mediated conditions*

WINTER PARK, Fla., and BUFFALO, NY, October 19, 2020 /PRNewswire/ -- Cytocom, Inc. (Cytocom), a leading biopharmaceutical company in the area of immune-modulation, and Cleveland BioLabs, Inc., (NASDAQ: CBLI), an innovative biopharmaceutical company developing novel approaches to activate the immune system, today announced that they have entered into a definitive merger agreement to combine their businesses in an all-stock transaction. Cytocom shareholders will have a majority position in the newly combined entity, which the parties anticipate will continue to be listed on the Nasdaq, and the initial Board of Directors for the combined company will consist of four members selected by Cytocom and three members selected by Cleveland BioLabs. The Boards of Directors of both companies have approved the combination.

Each party to the proposed merger believes that the combined company will create near-term commercial opportunities in numerous areas of significant unmet medical needs including acute radiation injury, oncology, infectious disease, inflammation and autoimmune-mediated conditions, with multiple commercial, regulatory and clinical milestones expected over the next 12 to 18 months. Operating as "Cytocom, Inc." and under the leadership of Cytocom's experienced management team, the combined company will be positioned for consistent growth.

**Overview**
Michael K. Handley, President and Chief Executive Officer of Cytocom, stated, "Our merger with Cleveland BioLabs and its subsequent immune-focused platform will be a transformative growth opportunity for Cytocom and Cleveland BioLabs shareholders. We believe that the combination of these highly complementary late-stage pipelines will strengthen our position and advance our efforts to unlock the potential of immune-modulating agents in the treatment of serious medical conditions. Further, this merger will enhance our ability to become a recognized leader in immune-modulating treatments and builds on the momentum created by our recent acquisition of ImQuest Life Sciences. We plan to utilize the combined platform to further drive value with additional clinical and commercial products and continue to seek strategic partnerships and acquisitions."

Dr. Andrei Gudkov, Chief Scientific Officer of Cleveland BioLabs, said: "This is an exciting day for Cleveland BioLabs and a great opportunity for our stockholders. The merger with Cytocom will allow us to add the strength of our science and bright

perspectives associated with Entolimod development in cancer treatment and radiation defense arenas with a string of immunomodulators developed by Cytocom to form a powerful blend of conceptually and scientifically aligned products. We believe that the merger with Cytocom is the ideal way to unlock the value of our technology platform and our lead drug candidate, Entolimod, and I look forward to seeing this exciting new therapy advance through the clinic."

(Emphasis in original).

## II. The Registration Statement Omits Certain Material Information

24. Defendants filed a materially incomplete and misleading Registration Statement with the SEC, despite the Individual Defendants being obligated to carefully review the Registration Statement before it was filed and disseminated to the Company's shareholders, in order to ensure that it did not contain any material misrepresentations or omissions. Therefore, the Registration Statement should be amended prior to the Shareholder Vote, so the Company's shareholders can make an informed voting decision in connection with the Proposed Transaction.

25. First, the Registration Statement completely omits Cytocom's financial projections ("Projections"), despite Cassel's reliance on them when conducting its fairness opinion. Registration Statement, 122-24. Indeed, Cassel utilized the Projections in performing Cytocom's *Risk-Adjusted Net Present Value Analysis*, and the analysis also specifically referenced Cassel's use of Cytocom's projected free cash flows through December 31, 2030. *Id.* at 125. The omission of the Projections is incredibly misleading because Cleveland Bio's shareholders are being asked to dilute their position in the Company by accepting a new stake in the combined company. Therefore, if the Projections and more specifically, Cytocom's free cash flows are not disclosed, the Company's shareholders will not know Cytocom's valuation, and in turn cannot make an informed decision on whether to vote in favor of the Proposed Transaction.

26. Second, the Registration Statement omits critical information regarding the financial analyses of Cytocom performed by Cassel in connection with the Proposed Transaction.

27. With respect to the *Risk-Adjusted Net Present Value Analysis* for Cytocom, the Registration Statement does not disclose the: (i) inputs and assumptions underlying the selected discount rates ranging from 33% to 37%; (ii) projected free cash flows of Cytocom through December 31, 2030; (iii) the inputs and assumptions underlying the terminal growth rates ranging from (2.00%) to 2.00%; and (iv) the inputs and assumptions underlying the discount rates of 58% to 62%. *Id.*

28. For Cytocom's *Selected Companies Analysis*, the Registration Statement omits the individual multiples observed for each of the 12 companies selected by Cassel. *Id.* at 125-26.

29. Third, the Registration Statement fails to disclose whether Cassel rendered financial services to the Company and/or Cytocom in the two years prior to performing its fairness opinion in connection with the Proposed Transaction. If Cassel did in fact provide its services in the past, then the Registration Statement must include the nature of those services and the fees Cassel received.

30. Fourth, the Registration Statement omits whether Cleveland Bio executed NDAs with Company A, B, and C. *Id.* at 113-14. If the Company did execute NDAs with any of these three companies, then the Registration Statement must also disclose whether those NDAs contained standstill provisions and, if so, whether those standstill provisions contained a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon execution of the Merger Agreement or still remain in effect. Failure to disclose the existence of DADW provisions creates the false impression that an interested party who signed an NDA could have made a superior proposal. **But that is not true.** If those NDAs contained DADW provisions, the interested potential acquirers could only make a superior proposal by breaching their respective agreement, because in order to make the superior proposal, they would have to

ask for a waiver, either directly or indirectly. Thus, omission of this information is misleading because potential topping bidders in the marketplace may be precluded from making a superior offer.

31. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, resulting from the Defendants' violations of their fiduciary duties. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violation of Section 14(a) of the Exchange Act and Rule 14a-9)**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which,

at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35.     The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

36.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding: (i) the Projections; (ii) the valuation analyses performed by Cassel; (iii) potential conflicts of interest for Cassel in connection with the Proposed Transaction; and (iv) whether Cleveland Bio executed NDAs with Company A, Company B, and Company C.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

38.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to

render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Cassel reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analysis provided by Cassel, as well as the fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and Cytocom, and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Cassel's analyses in connection with their receipt of the fairness opinion, question Cassel as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

39. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing

of the Merger Agreement and review of Cytocom's financial projections.

40. Cleveland Bio is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

41. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Cleveland Bio within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cleveland Bio, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance

of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT III

**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

51. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public shareholders.

52. The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

      C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      D.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 17, 2021

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*